UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Corinna Leigh Harvey,
    Claimant

    v.                                Case No. 17-cv-28-SM
                                      Opinion No. 2017 DNH 238
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration,
    Defendant


**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Corinna Harvey, moves to reverse or vacate the Acting Commissioner's decision denying her application for Supplemental Security Income Benefits under Title XVI of the Social Security Act. See 42 U.S.C. §§ 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted to the extent she seeks a remand for further proceedings, and the Acting Commissioner's motion is denied.

**Factual Background**

I. Procedural History.

In October of 2013, claimant filed an application for Supplemental Security Income ("SSI") benefits, alleging that she was disabled and had been unable to work since October 18, 2013. Claimant was 39 years old at the time. That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In September of 2015, claimant, her representative, and an impartial vocational expert appeared before an ALJ, who considered claimant's application de novo. Five weeks later, the ALJ issued her written decision, concluding that claimant was not disabled, as that term is defined in the Act. Claimant then sought review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 8). In response,

2

the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 9). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking SSI benefits is disabled under the Act if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  See Manso-Pizarro v. Sec'y

of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. § 416.920(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or

>       whether a specific job vacancy exists for [her], or
>       whether [she] would be hired if [she] applied for
>       work.

42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.


**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since the date on which she applied for benefits: October 30, 2013.  Admin. Rec. at 17.  Next, she concluded that claimant suffers from the following severe impairments: "obesity, asthma, shoulder disorder, major depressive disorder, anxiety disorder, and bipolar disorder."  Id.  But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 18.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of "light" work, subject to the following limitations: "claimant is limited to no climbing of ladders, ropes, or scaffolds; and occasional crawling.  In addition, the claimant is limited to routine day-to-day work; with no direct interaction with the general public; she is capable of incidental superficial interaction with the general public."  Admin. Rec. at 20.  In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work.  Id. at 25.  See also Id. at 81-82 (vocational expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 25.  Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, from October 30, 2013, through the date of her decision (November 24, 2015).

**Discussion**

Claimant challenges the ALJ's decision on two grounds, asserting that she erred: (1) by improperly using her lay knowledge (rather than securing medical experts) to determine claimant's residual functional capacity; and, somewhat relatedly, (2) by failing to give appropriate weight to the opinions of claimant's treating sources. Because the court agrees that the ALJ's assessment of the limitations imposed upon claimant by reason of her mental impairment lacks adequate support in the expert medical opinions of record, it will focus exclusively on that issue.

Claimant suffers from bipolar disorder type II - a type of manic-depressive illness defined by a pattern of depressive episodes and hypomanic episodes, but not the full-blown manic episodes characteristic of bipolar disorder type I. That type of mental illness presents particular difficulty in the disability context because one of its hallmark characteristics is the fluctuating, episodic nature of symptoms. As this court has observed:

> One feature - perhaps the hallmark - of bipolar disorder is that it is "episodic." The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so that any single notation by a provider that a patient is

> feeling better or has had a "good day" does not imply
> that the condition has been treated. Accordingly,
> where the claimant has a severe impairment of bipolar
> disorder, the ALJ must not simply "cherry-pick" the
> files of treating physicians to find evidence of good
> results among evidence of symptoms. Likewise, a
> treating source opinion that a claimant with bipolar
> disorder is "stable" must be viewed in context. An
> observation, for instance, that claimant is "stable in
> the office" is not the same as an observation of
> "stability" as to [claimant's] ongoing bipolar
> disorder.

Walsh v. Astrue, 2012 DNH 034, 2012 WL 941781, at *4 (D.N.H. Mar. 20, 2012) (citations, footnote, and internal punctuation omitted).

Here, claimant has "a very complicated history, as well as [a] complicated medication regimen." Admin. Rec. at 539, "Psychiatric History" completed by Bienvendido Manzanero, M.D., Hampstead Hospital. She has received outpatient psychiatric counseling for years, most recently from the Genesis Group, in Plymouth, New Hampshire. She has also been hospitalized (both voluntarily and involuntarily) as an inpatient psychiatric patient on eleven occasions. See, e.g., Id. at 537. She has also presented numerous times to various hospital emergency rooms, most often, it seems, with suicidal ideation or, at a minimum, thoughts of harming herself. See, e.g., Id. at 595, 637, 653.

9

To understand the difficult position in which the ALJ found herself in considering claimant's application, one must first understand the timing of certain events. On February 25, 2014, claimant met with Rexford Burnette, Ph.D., who completed a mental health evaluation report. Admin. Rec. at 532-36. Unfortunately, however, Dr. Burnette was provided with very few of claimant's medical records. See Id. at 532 (noting, on several occasions, the lack of medical records related to claimant's various mental health treatments). Consequently, Dr. Burnette based his opinions largely on his 60-minute interaction with claimant (who, it seems, was having a "good day"), as well as claimant's "vague" oral recitation of her treatment history. Indeed, Dr. Burnette recognized that although his opinions about claimant's symptoms "appear to be valid, there remain many unanswered concerns about this claimant's symptom presentation and diagnosis which could not adequately be resolved in the course of a one-hour clinical interview. Perhaps a careful review of her therapist's notes (Amy Sullivan) may clarify some of these issues." Id. at 534.

Two weeks later, on March 6, 2014, state agency examiner Michael Schneider, Psy.D., completed a review of claimant's medical history and, affording Dr. Burnette's report "great

weight," he concluded that claimant suffers from no severe mental impairment(s), and experiences only "mild" impairments in her activities of daily living, social functioning, and concentration. Admin. Rec. at 97-98. See generally 20 C.F.R. § 416.922 ("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.").

Meanwhile, on March 4, 2014 (and obviously unknown to Dr. Schneider), claimant had been admitted for psychiatric hospitalization in Concord, New Hampshire. She remained hospitalized for nearly a week, until March 10. Admin. Rec. at 579. And, just three days after her discharge, on March 13, 2014, claimant was taken to the emergency room at Spear Memorial Hospital in Plymouth by her mother, after claimant expressed a plan to cut her wrists. She was transferred to Franklin Hospital and involuntarily admitted for depression and suicidal ideation. Id. at 1218. Again, she remained hospitalized for nearly a week (until March 19).

Approximately seven months later, on October 6, 2014, claimant again presented to Spear Memorial Hospital, with depression and suicidal ideation. This time, she was

transferred to Hampstead Hospital, where she was admitted for "mood swings, depression and thoughts of cutting her wrists with a knife." Admin. Rec. at 537. Once again, she remained hospitalized for about one week (until October 13).

Subsequently, the claimant presented to the emergency room at Spear Memorial Hospital twice, and the emergency room at Concord Hospital once with depression and thoughts of harming herself. Admin. Rec. at 595 (October 20, 1994); 637 (April 17, 2015); and 653 (July 15, 2015). Parenthetically, the court notes that while the Commissioner attributes claimant's various lapses into deep depression and/or suicidal ideation to a lack of compliance with her prescribed medications, the treatment notes from those three emergency room visits do not suggest that she had been non-compliant.

In short, then, after claimant's 60-minute consultative exam with Dr. Burnette, and after Dr. Schneider completed his review of claimant's medical records, claimant was hospitalized at inpatient psychiatric care facilities three times (each for approximately one week), and she presented to various hospital emergency rooms another three times, for depression and suicidal ideation. Given all of that evidence, the ALJ properly declined

to adopt Dr. Schneider's opinion that claimant suffered from no severe mental impairment. But, because the ALJ gave "only some weight" or "little weight" to the opinions of claimant's treating sources, Admin. Rec. at 24-25, that put the ALJ in the position of having to rely upon her own lay opinion to infer the extent to which the symptoms of claimant's severe mental impairment impact her residual functional capacity. At least under the complex circumstances presented by this case, that is not permitted. As this court has observed:

> The court of appeals for this circuit has repeatedly held that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record. Accordingly, when assessing a claimant's RFC, the general rule is that an expert is needed to assess the extent of functional loss.
>
> That general rule, however, is subject to an exception: the Commissioner is not precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the Commissioner does not overstep the bounds of a lay person's competence and render a medical judgment. Thus, an expert's RFC evaluation is required where the record is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment.

Jabre v. Astrue, No. 11-CV-332-JL, 2012 WL 1216260, at *8 (D.N.H. Apr. 5, 2012) (citations and internal punctuation omitted), report and recommendation adopted sub nom. Jabre v. US

13

Soc. Sec. Admin., No. 11-CV-332-JL, 2012 WL 1205866 (D.N.H. Apr. 9, 2012).

Here, the expert medical opinions upon which the ALJ relied most heavily - those of Michael Schneider, Psy.D., and Rexford Burnette, Ph.D. - were decidedly unhelpful to the ALJ in determining claimant's RFC. Both reports were prepared well before claimant's numerous recent hospitalizations and emergency room visits. And, as Dr. Burnette himself recognized, his report (upon which Dr. Schneider relied) was prepared without the benefit of numerous relevant records about claimant's lengthy treatment history for mental health issues.

Given the circumstances, the most prudent course of action would seem to be for the court to remand this matter to the ALJ so she may obtain a new, more current consultative mental examination of claimant (presumably involving a complete review of all of claimant's relevant medical records) and an assessment of the extent to which claimant's mental impairment affects her ability to perform work-related tasks. See generally 20 C.F.R. 416.919.

## Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted to the extent she seeks a remand for further proceedings. The Commissioner's motion to affirm her decision (document no. 9) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated November 24, 2015, is vacated and this matter is hereby remanded for further proceedings consistent with this order. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 14, 2017

cc: D. Lance Tillinghast, Esq.
Robert J. Rabuck, Esq.